# In The United States Court of Federal Claims

No. 04-1209 C

(Filed: March 19, 2007)

This Opinion Will Not Be Published in the U.S. Court of Federal Claims Reporter Because It Does Not Add Significantly to the Body of Law.

_____

| | |
|---|---|
| 1-10 INDUSTRY ASSOCIATES, LLC, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES, | * |
| | * |
| Defendant. | * |
| | * |

_____

**ORDER**

_____

**ALLEGRA, Judge:**

  This matter is before the court on an Order to Show Cause why sanctions should not be imposed against defendant's counsel under RCFC 11.

**I. BACKGROUND**

  This case involves a lease of commercial space to the United States Postal Service (the Postal Service). Under the lease, the Postal Service agreed to pay "recurring costs" for utilities. When the plaintiff billed the Postal Service for electricity, it added a 15 percent surcharge to the electric bill. On July 23, 2004, plaintiff filed a complaint against defendant alleging that defendant had failed to make electricity payments throughout the lease period and had neglected to pay for adjustments reflecting the increase in the cost of the electricity over the years. On October 8, 2004, defendant filed its answer in this case; no counterclaims were filed at that time.

  On February 28, 2005, the parties filed their joint preliminary status report. In this report, defendant made what its counsel now admits was a reference to the surcharge, stating that one of the issues in this case is "whether plaintiff may augment the electricity charges to defendant." Discovery closed in November of 2005. On May 5, 2006, defendant filed its counterclaim

essentially seeking to recover the electricity surcharges, that is, the 15 percent surcharge that plaintiff added to the electricity bills for the facility in question.

On June 23, 2006, plaintiff moved to dismiss defendant's counterclaim, arguing that it was untimely under RCFC 13 and 15.  Plaintiff maintained that defendant was aware of the potential counterclaim as early as 1996, supporting that claim with a copy of a reconciliation report from 1996, signed, as received, by the Postal Service, that expressly revealed the surcharge.  Plaintiff further noted that, during the depositions in this case, plaintiff's witnesses provided information to defendant's counsel regarding how the electric bills were calculated.

On August 8, 2006, defendant, through its counsel, filed its brief responding to plaintiff's motion to dismiss defendant's counterclaim, averring that the counterclaim was "not in existence" at the time defendant served its answer to the complaint.  In this regard, the brief asserted that "[t]he contracting officer has stated that he was not aware, until February 2006, of the 15% surcharge that formed the basis for the Government's counterclaim."  Later, the brief reiterated that [t]he contracting officer has stated that the basis for the claim was made known to him in February 2006."  Based upon these statements, the brief concluded, that "there does not exist here any delay such as has caused courts to refuse leave to amend."  Defendant's brief mentioned neither the 1996 bill, its February 2005 status report, nor the pre-November 2005, deposition testimony regarding the surcharge.

During the oral argument conducted on November 13, 2006, the court inquired as to when defendant's counsel first knew about the surcharge that formed the basis for defendant's counterclaim.  In response, defendant's counsel revealed, for the first time, that he had discussed the surcharge with plaintiff's counsel in November 2004, and with various Postal Service representatives during the summer of 2005.  He also confirmed that the February 2005 joint preliminary status report was intended to refer to the surcharge issue and that the issue had been discussed during the depositions conducted in November 2005.  Based on these revelations, the court expressed reservations as to whether defendant's counsel had been candid with the court when, in his brief, he did not disclose these details but rather left the impression that government officials did not know about the counterclaim until sometime shortly before February of 2006.  On November 14, 2006, the court dismissed the counterclaim as untimely.

On November 17, 2006, the court issued an order requiring defendant's counsel to show cause why he should not be sanctioned under RCFC 11(b).  As required by the rule, the order described the specific conduct alleged to violate paragraph (b) and provided defendant's counsel with an opportunity to respond.  On December 1, 2007, defendant's counsel filed his response to the show cause order.

**II.    DISCUSSION**

The decision to impose sanctions is a matter within the court's sound discretion.  *See, e.g., A. Hirsh, Inc. v. United States*, 948 F.2d 1240, 1246 (Fed. Cir. 1991); *Adkins v. United*

*States*, 816 F.2d 1580, 1581-82 (Fed. Cir. 1987). Nonetheless, for a sanction to be validly imposed, the conduct in question must be sanctionable under the authority relied upon, in this case, RCFC 11. *See Cunningham v. County of Los Angeles*, 879 F.2d 481, 490 (9th Cir.), *cert. denied*, 493 U.S. 1035 (1990).

      An attorney is under a high fiduciary duty to represent fairly his client, but he or she "owes substantial duties to the court and to the public as well." *Hirschkop v. Snead*, 594 F.2d 356, 366 (4th Cir. 1979). An attorney does not simply act as an advocate for his client for he or she is an officer of the court and, accordingly, has a duty of candor in dealing with the court. *See Federated Mut. Ins. Co. v. McKinnon Motors, L.L.C.*, 329 F.3d 805, 808-09 (11th Cir. 2003); *Pearson v. First NH Mort. Corp.*, 200 F.3d 30, 38 (1st Cir. 1999); *United States v. Associated Convalescent Enterprises, Inc.*, 766 F.2d 1342, 1346 (9th Cir. 1985). In particular, attorneys are expected to bring directly before the court all those conditions and circumstances which are relevant in a given case. *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 457-58 (4th Cir. 1993); This responsibility inheres in RCFC 11(b), which requires an attorney to ensure that "the allegations and other factual contentions" made in a filing "have evidentiary support" – a requirement that, according to the rules' advisory committee notes, prohibits a party from "deny[ing] an allegation it knows to be true." *See* Fed. R. Civ. P. 11, advisory committee note (1993); *see also*; *Lony v. E.I. Du Pont Nemours & Co.*, 935 F.2d 604, 617 (3d Cir. 1991). According to its drafters, Rule 11(b) requires "litigants to 'stop-and-think" before initially making . . . factual contentions," thereby "emphasiz[ing] the duty of candor." Fed. R. Civ. P. 11, advisory committee note (1993); *see also Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997), *cert. denied*, 422 U.S. 1046 (1998); *Ali v. Mid-Atlantic Settlement Servs., Inc.*, 233 F.R.D. 32, 39 (D.D.C. 2006).

      Under RCFC 11, if there is no factual basis for a representation made by a litigant, then sanctions may be imposed. *See, e.g., Chadhry v. Gallerizzo*, 174 F.3d 395, 411 (4th Cir. 1999), *cert. denied*, 528 U.S. 891 (1999) (affirming sanctions imposed where plaintiff's claims were "utterly without factual foundation"); *Bay State Towing Co. v. Barge Am.*, 21, 899 F.2d 129, 133 (1st Cir. 1990) (sanctions appropriate where document is "basically false or misleading or inadequately supported"). Covered within this rubric are not only affirmative misrepresentation of critical facts, *see, e.g., Peerless Indus. Painting Coatings Co. v. Canam Steel Corp.*, 979 F.2d 685, 687 (8th Cir. 1992), but also the failure to reveal material facts. *See Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346, 1354 (Fed. Cir. 2003); *White v. Gen. Motors Corp.*, 908 F.2d 675, 682 (10th Cir. 1990), *cert. denied*, 498 U.S. 1069 (1991) (sanctions imposed where plaintiff failed to disclose earlier release from liability); *In re Ronco, Inc.*, 838 F.2d 212, 218 (7th Cir. 1988) (affirming sanctions against attorney for omitting "highly relevant" facts); *see also* Georgene M. Vairo, Rule 11 Sanctions § 6.04 (2004) ("Omitting material facts may also result in sanctions."). Nonetheless, some courts have refused to impose sanctions for critical omissions absent proof that the proponent of the statement was aware of the relevance of the omitted facts and intended to mislead the court by failing to raise them. *See, e.g., Griggs v. BIC Corp.*, 844 F. Supp. 190, 202 (M.D. Pa. 1994), *aff'd*, 37 F.3d 1486 (3d Cir. 1994). Other courts, emphasizing the reasonable inquiry requirement of Rule 11, do not require a showing of subjective bad faith or an intent to mislead, but rather have held that sanctions may be imposed on "good faith"

mistakes, if a reasonable inquiry would have revealed the mistake and was not conducted. *See*, *e.g.*, *G.C. & K.B. Investments v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003); *Bradgate Assocs. Inc. v. Fellows, Read & Assocs., Inc.*, 999 F.2d 745, 749 (3d Cir. 1993); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 n.11 (1991) (discussing this issue under the prior version of Rule 11).

In the court's view, a standard that requires some finding of culpability finds support in the language of Rule 11(b), which requires that factual contentions have evidentiary support "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances." But how much culpability? While a finding of culpability may be necessary to support, in turn, a finding of sanctions, when sought via a motion filed under RCFC 11(c)(1)(A), that provision provides the potential target of sanctions with a 21-day period within which to withdraw or correct the challenged submission. No such safe harbor exists under the court-initiated procedures of RCFC 11(c)(1)(B). This has caused a few courts to conclude that, where the court initiates the inquiry, only more egregious conduct should be sanctioned. *See Kaplan v. DaimlerChrylser, A.G.,* 331 F.3d 1251, 1255-56 (11th Cir. 2003); *In re Pennie & Edmonds*, LLP, 323 F.3d 86, 90 (2d Cir. 2003); *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151 (4th Cir. 2002); *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998). These courts generally rely upon that portion of the advisory committee notes indicating that court-initiated sanctions should be viewed as "akin to contempt," Fed. R. Civ. P. 11(c)(1)(B) advisory committee notes (1993), with at least one court concluding that a finding of bad faith is essential to support court-initiated sanctions. *See In re Pennie*, 323 F.3d at 91; *cf. Kaplan*, 331 F.3d at 1256 (noting the issue, but declining to take a position on this issue).

But, as several courts have observed, the latter position is irreconcilable with the language of the rule, which employs the same representation standards in Rule 11(b), regardless of how the sanctions process is initiated. *See Young v. City of Providence ex rel. Napolitano*, 404 F.3d 33, 39 (1st Cir. 2005) ("Nothing in the language of Rule 11(c) says that, if the court initiates the inquiry, something more than a Rule 11(b) breach of duty is required."); *Lucas v. Spellings*, 408 F. Supp. 2d 8, 11 (D.D.C. 2006) (same).[1] These cases observe that the advisory committee's discussion of Rule 11(b) rejects a bad faith requirement and conclude that the statement likening court-initiated sanctions to "contempt" should not be viewed as reintroducing a bad faith requirement, particularly absent any express language in the rule itself. *Jenkins v. Methodist Hospitals of Dallas,* Inc., 2007 WL 259571 at *7 (5th Cir. Jan. 31, 2007); *Young*, 404 F.3d at 40; *see also Pennie*, 323 F.3d at 94-95 (Underhill, J., dissenting). Finding these cases persuasive, the court concludes that it need not find that defendant's counsel acted in bad faith or even intentionally intended to mislead the court, in order to impose sanctions, but instead must analyze his conduct under an objective standard of reasonableness, *to wit*, whether a reasonable, competent attorney, acting in like circumstances, would have believed a filing to be factually

---

[1] *See also* Jerold S. Solovy, "Sanctions under Rule 11: A Cross-Circuit Comparison, 37 Loy. L.A. L. Rev. 727, 755 (2004) (rejecting the decision in *Pennie*); Gregory P. Joseph, "Sua Sponte Sanctions, 4/14/03 Nat'l L.J. B6, (col. 1) (2003).

justified. *See Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 802 (5th Cir. 2003), *cert. denied, sub nom., Minor v. Kmart Corp.*, 540 U.S. 1047 (2003); *Didie v. Howes*, 988 F.2d 1097, 1104 (11th Cir. 1993); *Dodd Ins. Servs., Inc. v. Royal Ins. Co. of Am.*, 935 F.2d 1152, 1155 (10th Cir. 1991); *see also* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1335 (3d ed. 2004) (noting that this aspect of the rule was not changed in the 1993 amendment).

In the case *sub judice*, it is beyond peradventure that the facts which defendant's counsel omitted from his response to plaintiff's motion to dismiss were material – indeed, they were determinative under the applicable rules, which govern the timing of compulsory counterclaims. Those facts showed that defendant's counsel knew of the potential counterclaim as early as the fall of 2004, but did not do anything significant to perfect that claim until approximately 15 months later – several months after discovery in this case had closed. Asserting that the "contracting officer has stated that he was not aware of the claim until February of 2006," defendant's counsel argued that the counterclaim did not mature until that time. But, at the time he made this representation, he knew full well – but did not disclose – that he and at least one other Postal Service official were aware of the critical allegations well before the time they were presented to the contracting officer. In the court's view, defendant's counsel should have known that the timing of his knowledge of the facts underlying the potential counterclaim was legally relevant to the timeliness of the government's assertion of that claim and that his selective statement regarding when the contracting officer found out about the claim had the potential for misleading the court as to when the claim first became known to defendant's representatives.

To be sure, there is more doubt as to whether defendant's counsel knew the significance of the omitted facts and intended to mislead the court in failing, at least initially, to reveal them. In its motion to dismiss, plaintiff did not clearly define the standard for when a counterclaim matures for purposes of RCFC 13 and 15. It did, however, assert that "[a]lthough Defendant claims that the alleged overcharge was only realized during discovery, this is not borne out by the facts, which is that the Postal Service had actual knowledge of the rate being charged, or could have figured out the rate by a simple computation of dividing the kilowatt usage by the price charged." In this vein, the brief continued –

> The fact that it took a conscientious attorney looking at everything in this matter, and looking for a defense to a basically indefensible case, to actually do the math is not a reason to allow a late counterclaim. Lack of attention on the part of the Postal Service does not obviate the fact that this claim could and should have been raised anytime over the last fifteen years, and certain should have been raised at the time the answer was filed it if was to be heard at all. The fact that counsel for defendant just discovered something that was never hidden must not be the basis to allow a late claim.

Plaintiff attached to its motion a copy of a 1996 report contemporaneously received by the Postal Service, which, on its face, revealed the existence of the surcharge. Accordingly, at the time he filed his response, defendant's counsel knew that plaintiff had alleged that the counterclaim was

untimely because the Postal Service had long had knowledge of the surcharge and that the untimeliness of the counterclaim was not cured by "[t]he fact that counsel for defendant just discovered something."

Defendant's opposition to plaintiff's motion to dismiss included a statement of the facts, in which it admitted that the electrical bills had included the surcharge. This statement indicated that "[i]n February 2006, the contracting officer became aware that the plaintiff had been adding said 15% surcharge to all electrical bills presented to the Postal Service under the lease." In the argument portion of the brief, defendant asserted that, under RCFC 13(e), it counterclaim "matured or was acquired by defendant after serving its pleading." By way of explanation, defendant's brief stated –

> In this case, defendant's counterclaim matured or was acquired well after defendant served its answer in late 2004. The contracting officer has stated that he was not aware, until February 2006, of the 15% surcharge that formed the basis for the Government's counterclaim. Moreover, pursuant to the Contract Disputes Act, 41 U.S.C. § 605(a), defendant could not have filed its counterclaim prior to the issuance of a contracting officer's final decision in April 2006. Thus, this counterclaim is precisely the type of after acquired or matured counterclaim whose filing after the pleadings is permitted by RCFC 13(e).

Later, defendant asserted that it had not unduly delayed the filing of the counterclaim, stating in support of this claim – "Nor can plaintiff seriously claim that defendant has delayed in the filing of its counterclaim. The contracting officer has stated that the basis for the claim was made known to him in February 2006 . . . . and he issued his final decision two months later. Thus, there does not exist here any delay such as has caused courts to refuse leave to amend." The brief did not otherwise respond to plaintiff's claim that the Postal Service had long known about the surcharge, nor did it correct any "misstatements" in plaintiff's brief as to when defendant's counsel first knew about the surcharge issue.

Perhaps, it did not occur to defendant's counsel that his and the agency's prior knowledge of the surcharge issue caused the counterclaim to "mature" for purposes of RCFC 13 and 15, owing to the lack of any definition in the briefs as to the legal meaning of the term "maturity." But, it is inconceivable that, at the time he filed his response, defendant's counsel was unaware that his and the agency's conduct for the fifteen months prior to February 2006 were relevant and material in deciding whether there had been delay in pursuing the counterclaim. Indeed, the nature of that prior conduct clearly was placed into issue by plaintiff's prior assertion that the agency knew about the surcharge as early as 1996 and by plaintiff's assertions regarding how the issue was discovered by defendant's counsel. In rebutting those claims, defendant left the misleading impression that the Postal Service had not discovered the existence of the surcharge until shortly before February of 2006, when he knew, based upon personal knowledge, that the issue had been discovered as early as October of 2004.

Did defendant's counsel intend to mislead the court? There are some indications that he did not. After all, he hinted at the surcharge issue in a status report filed with the court in February 2005. Moreover, he supplied various details about his knowledge of the surcharge issue when questioned by the court at oral argument. Nonetheless, it strains credibility to suggest that defendant's counsel did not understand that his statements on brief would mislead the court into concluding that the Postal Service had only learned of the surcharge a few months before the counterclaim was filed and that there thus had been no undue delay in bringing that claim. At the least, a reasonable, competent attorney, acting in like circumstances, should not have believed his representations (and omissions) to be factually justified. Had this misimpression not been corrected promptly, the court might well have allowed the counterclaim to proceed or, at the least, would have been faced with a more difficult issue as to whether to allow that claim to proceed. Again, the timing of when the Postal Service first became aware of the surcharge issue was highly relevant not only to when the claim "matured or was acquired" under RCFC 13(e), but also to the more straightforward issue whether the defendant had failed to set up the counterclaim "through oversight, inadvertence, or excusable neglect" under RCFC 13(f). Ultimately, however, for the reasons indicated above, it is irrelevant whether defendant's counsel subjectively intended to mislead this court. As such, based on the record, the court finds that, in filing defendant's response to plaintiff's motion to dismiss the counterclaim, defendant's counsel violated the duty of candor embodied in RCFC 11(b).

RCFC 11(c) indicates that if the court determines that RCFC 11(b) has been violated "the court may . . . impose an appropriate sanction upon the attorneys . . . responsible for the violation." As noted at the outset, whether to impose sanctions thus is a matter within the discretion of the court. See *Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002). Under RCFC 11(c)(2), the "sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." If a sanction is imposed on the court's initiative, this provisions continues, it "may consist of, or include, directives of a nonmonetary nature [or] an order to pay a penalty into court."

The advisory committee notes to Rule 11 indicate that, in deciding whether to impose a sanction or what sanctions would be appropriate, the court may consider a range of factors among them, whether the conduct "was part of a pattern of activity, or an isolated event;" "whether it infected the entire pleading," "whether the person has engaged in similar conduct in other litigation," and "what effect it had on the litigation process in time or expense." See Fed. R. Civ. P. 11, advisory committee notes (1993). Given this guidance, it is unfortunately relevant that this is not the first, but the ***second*** time that defendant's counsel has had difficulties with candor before the undersigned. In the trial of another case, *R.P. Wallace v. United States*, No. 96-222C, on the morning of May 5, 2003, defendant's counsel introduced into the record an expert report concerning delay damages, which stated that certain daily reports from the worksite were missing. On May 6, 2003, the plaintiff presented an expert witness on the issue of delay, who likewise testified that the same reports were missing. That witness then attempted to extrapolate damages without those reports. Defendant's counsel, on cross-examination, asked

the witness to confirm that the reports were missing, which he did, without further comment. Yet, the next day, in examining a witness in his case, defendant's counsel sought to introduce the missing reports. Under questioning from the court, defendant's counsel indicated that he had found the documents "two weeks" earlier.[2] He could not explain why he had neither notified opposing counsel about this nor modified his pretrial filings to list the documents, indicating only that he was "not making any attempt to mislead the court." R.P. Wallace, Trial Tr. vol 3, 818-20 (May 7, 2003). That same day, the court ordered defendant's counsel to provide an affidavit explaining, in greater detail, the facts surrounding his discovery of the missing reports. In that affidavit, which was filed on May 30, 2003, defendant's counsel contradicted his earlier statements and asserted that the missing reports had been discovered after plaintiff's expert had testified on May 6, 2003, when defendant's expert looked through a set of xeroxed reports that proved to be different than the one he had used in preparing his report. The affidavit neither explained why defendant's counsel had previously indicated that he had found the documents two weeks earlier nor adequately why, even if the documents were discovered on the evening of May 6 or the morning of May 7, he did not immediately notify opposing counsel and the court that the documents had been found and were available. At this time, the court did not pursue the matter further, primarily because plaintiff confirmed that it had not propounded a discovery request that covered the missing documents and because there was no indication of prejudice.

Weighing the factors listed above,[3] the court concludes that the violation here is serious enough to warrant a sanction. In the court's view, however, a reprimand, rather than a fine, is adequate for several reasons. First, it is unclear whether defendant's counsel actions were willful, or intended to mislead the court or to injure plaintiff. Indeed, every indication is that defendant's counsel has exercised good faith in handling this matter since the incident. Second,

---

[2] Specifically, the following exchange occurred:

| | |
|---|---|
| Counsel: | . . . The daily reports in this case have been subject to various gaps, and recently we discovered some of these daily reports within the Navy's files after we had put together the exhibits for the case. |
| Court: | Be more specific. . . . When is recently? |
| Counsel: | I think about two weeks ago. |

R.P. Wallace, Trial Tr. vol. 3, 816 (May 7, 2003).

[3] To be sure, the Order to Show Cause issued herein did not cite the incident in R.P. Wallace, but the court does not read RCFC 11(c)(1)(B) as requiring it to describe in its order every factor that might impact its decision to impose sanctions. Rather, the court is obliged to describe only "the specific conduct that appears to violate subdivision (b)." Moreover, it bears noting that defendant's counsel previously was afforded an opportunity to respond to the court's concerns regarding his conduct at the R.P. Wallace trial.

it is obvious that defendant's counsel had no financial motivation to engage in the lack of candor that the court finds objectionable. Finally, relying, in part, upon the supervisory processes at both the Post Service and the Department of Justice, the court believes that a reprimand is adequate both to deter defendant's counsel from repeating similar conduct and to deter similar activity by other litigants.

### III.  CONCLUSION

Determinations under Rule 11 often involve "'fact-intensive, close calls,'" *Cooter & Gell v. Hartmax Corp.,* 496 U.S. 384, 404 (1989) (quoting Charles M. Shaffer Jr. & Paul M. Sandler, Sanctions: Rule 11 and Other Powers 15 (2d ed. 1988)), and this case is no exception. Mindful of the serious implications of imposing sanctions, the court simply cannot don blinders to the conclusion that the conduct of defendant's counsel violated the duty of candor embodied in RCFC 11. Moreover, while the reprimand here falls squarely on counsel's shoulders, the court notes that "[t]he ultimate responsibility for the completeness and accuracy of papers that are filed by [agency] lawyers rests with the [agency] itself." *Precision Specialty Metals*, 315 F.3d at 1358.

Defendant shall provide copies of this order to the officers at the Postal Service and the Department of Justice responsible for monitoring this litigation, including the Assistant Attorney General of the Civil Division.

**IT IS SO ORDERED**.

s/ Francis M. Allegra
Francis M. Allegra
Judge